IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFF GIERINGER , : | : | CIVIL ACTION |
| | : | NO. 10-mc-214 |
| v. | : | |
| | : | |
| THE CINCINNATI INSURANCE | : | |
| COMPANIES | : | |
| | : | |

O'NEILL, J.                                                                                     January 28, 2011

**MEMORANDUM**

Now before me is a motion to compel production of documents arising from claims related to a house fire in Gaitlinburg, Tennessee. The parties to the action dispute the value of the personal property located at plaintiff Jeff Gieringer's residence at the time of the fire. Defendant The Cincinnati Insurance Companies seeks to limit insurance coverage arguing, in relevant part, that plaintiff began moving his personal property to Tennessee prior to the fire. Cincinnati now moves to compel production of a property inspection report prepared by Mueller Services and certain related documents and photographs from non-party Southern Insurance Company of Virginia. Southern has withheld the documents, arguing that the materials are "consumer reports" within the meaning of the Fair Credit Reporting Act and may only be disclosed pursuant to instructions from the Gieringers or an order of the court. Cincinnati argues that the materials withheld by Southern: (1) are not "consumer reports" such that their distribution is subject to the limitations set forth in FCRA; and (2) even if they are consumer reports, they are relevant and probative to Cincinnati's defenses with respect to Plaintiff's claim

for insurance coverage. Assuming that the requested documents are "consumer reports," I find that Southern should produce the documents to Cincinnati in response to its subpoena. FCRA does not prevent disclosure of the requested documents because Cincinnati has established a legitimate business need for the information.

Southern argues that because it is a "user" of consumer reports for underwriting purposes it is subject to FCRA's restrictions on the dissemination of consumer credit information. FCRA "imposes liability for *using* . . . a consumer report" for purposes not set forth in the statute. Cole v. U.S. Capital, Inc., 389 F.3d 719, 731 n.14 (7th Cir. 2004); see also 15 U.S.C. § 1681b(f) (emphasis added) ("A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."); James v. Interstate Credit and Collection, Inc., No. 03-1037, 2005 WL 1806501, at *3 (E.D. Pa.. Jul. 29, 2005) ("FCRA requires that a user of a consumer report obtain it for a permissible purpose"); Grab v. American Lawyers Co., No. 05-0812, 2007 WL 842045, at * 4 (D. Haw. Mar. 19, 2007) ("a 'user' of a consumer report can be liable for using or obtaining the report for anything other than permissible purposes"). In declining to produce the requested documents, Southern seeks to shield itself from a potential FCRA action against it by the plaintiff.

The policy behind FCRA does not justify preventing disclosure by Southern of the information sought by Cincinnati. FCRA was intended "to restrict the purposes for which consumer reports may be used, for the simple reason that such reports may contain sensitive information about consumers that can easily be misused." St. Paul Guardian Ins. Co. v. Johnson,

884 F.2d 881, 884 (5th Cir. 1989); see also 15 U.S.C. § 1681(b) ("It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."). Accordingly, FCRA Section 1681b provides that consumer reports may only be disclosed for a "permissible purpose." 15 U.S.C. § 1681b ("any consumer reporting agency may furnish a consumer report under the following circumstances and no other").

Permissible purposes for the use or release of a consumer report include release to a party who "otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer." 15 U.S.C. § 1681b(3)(E). Cincinnati does not seek the property inspection report prepared by Mueller Services and the related documents and photographs for any improper purpose. Rather, it seeks only to defend itself in litigation arising out of a business transaction between itself and Gieringer. Cincinnati has a legitimate business need for the property inspection report prepared by Mueller Services and related emails and photographs. Therefore, Cincinnati's subpoena to Southern provides Southern with a permissible purpose for releasing the information sought to Cincinnati.

In Allen v. Kirkland & Ellis, No. 91-8271, 1992 WL 2086285 at *2 (N.D. Ill. Aug. 17, 1992), the court found that "[p]reparation for litigation regarding a business debt qualifies as a permissible purpose under the broad language of § 1681b(3)(E)." Allen was the sole shareholder of a company that sued Siemens. Kirkland and Ellis, the law firm representing Siemens, requested and obtained Allen's credit report for use in the litigation. Allen thereafter sued

Kirkland and Ellis alleging that the firm's use of his credit report constituted a violation of FCRA. In finding that the firm had a permissible purpose for the use of his credit report, the court found that "the obligations running between Siemens and [Allen's' company and Allen were] 'business transactions' and lawsuits based on them are 'in connection' with these transactions." Id.; see also James v. Interstate Credit and Collection, Inc., 2005 WL 1806501, at *3 (finding that defendant had a permissible purpose in obtaining plaintiff's consumer report in response to a subpoena where the consumer report was obtained to determine the status of a debt which was the subject of the lawsuit). Similarly, Gieringer's lawsuit against Cincinnati arises out of a business transaction between them – Cincinnati's provision of insurance to Gieringer. Cincinnati has a legitimate business need for information pertaining to the value of the personal property located at Gieringer's residence at the time of the fire, information that includes the documents withheld by Southern. But c.f. Slantis v. Capozzi & Assocs., No. 09-00049, at *2 (M.D. Pa. Aug. 9, 2010) (finding no legitimate business need where defendant sought to discover consumer report to "determine whether a counterclaim in a suit between plaintiff and defendant's client 'would be financially worth raising.'").

  Accordingly, I will compel Southern to disclose the property inspection report prepared by Mueller Services and any emails and photographs related to the property inspection to defendant The Cincinnati Insurance Companies. FCRA section 1681b(1) allows for the production of consumer reports "in response to an order of a court having jurisdiction to issue such an order." 15 U.S.C. § 1681b(1); see also In re Grand Jury Proceedings, 503 F. Supp. 9, 11 (D.N.J. 1980) ("15 U.S.C. § 1681(b)(1), referring to an 'order of court' reflects no intent to specify what kind of order or its form is within the expression. . . . It may be a paper, bearing the

word 'ORDER', signed by a judge or other judicial officer. Or it may be a subpoena, writ of execution or other process."); Laufman v. Oakley Bldg. & Loan Co., 72 F.R.D. 116, 122 (D. Oh. 1976) ("If the defendants comply with an order of this Court, no civil liability will result from such compliance.").

    An appropriate Order follows.